**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

NEW ENGLAND HEALTH CARE
EMPLOYEES UNION, DISTRICT
1199, SEIU,

    Plaintiff,

v.                          C.A. No. 12-893

WOMEN AND INFANTS HOSPITAL,

    Defendant.

## MEMORANDUM AND ORDER

RONALD R. LAGUEUX, Senior United States District Judge.

    This matter is before the Court on the parties' cross
motions for summary judgment, urging the Court to affirm or
vacate the Decision and Award issued by Arbitrator Tim Bornstein
("the Arbitrator") on October 17, 2012.  The parties to the
dispute include labor union New England Health Care Employees
Union, District 1199 ("the Union"), and employer Women and
Infants Hospital ("the Hospital").  The Union filed an
unsuccessful grievance over workplace changes that affected five
bargaining unit employees; which changes, it argued, were in
violation of the parties' collective bargaining agreement ("the
Contract").  The Arbitrator ruled in favor of the Hospital,
determining that no violation of the Contract had taken place.
With the qualification explained below, this Court affirms the

Arbitrator's Decision and Award.

## **Facts**

The Union represents approximately 1600 employees, in four separate bargaining units, at the Hospital.  After considering the offers of several corporate suitors over the past decade, the Hospital has been acquired by parent corporation Care New England Health System ("Care New England").  A large entity, Care New England comprises several other Rhode Island health care facilities, including Butler Hospital, Kent Hospital, the VNA of Care New England and the Care New England Wellness Center. Sometime around 2011, Care New England introduced a new telecommunications system for the Hospital and its other facilities.  The new system is computer-based, and provides for the high-tech integration of desk telephones, pagers, cell phones, voice-mail, e-mail, and web- and video-conferencing.

Prior to the adoption of the new system, five bargaining unit employees in the Telecommunications Department took care of the Hospital's phone system.  Three of these employees are technicians who, at various sites, installed, serviced and repaired the equipment, which included telephones, fax machines, pagers, intercom, cable television, cell phones and an emergency satellite system.  The other two employees are clericals who, among other tasks, handled all service requests, worked with outside vendors, and reviewed and assigned billing and payments.

-2-

It is the Court's understanding that these five employees still work for the Hospital but that their duties have changed as a result of the new phone system.

Heather Hartman, director of technical services for Care New England, testified at the arbitration hearing and attempted to explain the new phone system, and the accompanying changes.  The new system is staffed by non-union Help Desk analysts and telecommunications analysts, positions which, unlike the bargaining unit positions, require bachelor of science degrees in computer science.  According to the Hospital, "as a result of the adoption of the System, it eliminated some now-obsolete job duties of the Telecommunications Clericals, and [when it] integrated some of the job duties previously performed by the Technicians and Telecommunications Clericals with work performed by CNE's more highly trained help desk analysts and telecommunications analysts (collectively the "Analysts") and assigned this work to the Analysts."  ECF Doc. 6, Ex. F, Hospital's post-arbitration hearing brief.

### The Contract

Although the clerical workers and the technicians are in different bargaining units, the pertinent contractual provisions are the same for both groups.  Two sections are germane to this dispute.  Article XXX, Successorship, states as follows:

> 1. <u>Bargaining Unit Work</u>.  All bargaining unit work done at the following sites shall be

> done by District 1199 members under the terms
> and conditions of the applicable 1199
> agreement.  'Bargaining unit work' means work
> presently and routinely performed at the site
> by Women & Infants' Employees who are members
> of District 1199 bargaining units which Women
> & Infants continues to perform at the site by
> the employment of Employees.

The contract goes on for several pages to list locations;

however, there is no dispute that the language quoted above

pertains to the five employees in question.  This provision's

second paragraph states that the Agreement is "binding on the

Employer and the Union and their respective successors and

assigns" including the Hospital's "purchaser, transferee or

merger partner."

In Article XIX, entitled "Management Rights," certain powers

are reserved for the Hospital:

> 1. Except as in this Agreement otherwise
> provided, the Employer retains the exclusive
> right to hire, direct and schedule the
> working force; to plan direct and to control
> operations [sic]; to hire and discharge
> Employees for cause; to introduce new or
> improved methods or facilities and in all
> respects to carry out, in addition, the
> ordinary and customary functions of
> management.  None of these rights shall be
> exercised in a capricious or arbitrary
> manner.
>
> 2.  The Union, on behalf of the Employees,
> agrees to cooperate with the Employer to
> attain and maintain full efficiency and
> maximum patient care and the Employer agrees
> to receive and consider constructive
> suggestions submitted by the Union toward
> these objectives.

-4-

## The Arbitration Award

After listening to two days of testimony, the Arbitrator provided a time period during which the parties attempted and failed to settle their dispute.  They then submitted post-hearing briefs, but were unable even to agree upon the issues to be resolved.  The Arbitrator ruled in favor of the Hospital.

Based upon the testimony of Heather Hartman, the Arbitrator concluded that the Hospital transferred "approximately 25% of the work of the W & I's telecom technicians and clericals to CNE's Help Desk, which is staffed by non-bargaining unit analysts and telecommunications analysts."  He reiterated this conclusion later in the Decision, stating, "In the past, W & I's telecom technicians and clericals performed some of the same tasks that have been transferred to CNE's Help Desk analysts."  However, he continued, some of the tasks previously performed by the clericals are now "obsolete," or have been "eliminated or automated."  Additionally, the bargaining unit employees continue to perform some of the same work as in the past, such as updating the switchboard directory and tracking *per diem* use of phone equipment.  The Arbitrator added, "Hartman acknowledged that the Employer has not considered retraining W & I's technicians and clericals to perform work that has been reassigned to Help Desk analysts and telecommunications analysts."

Notwithstanding his finding that 25% of these employees'

-5-

bargaining unit work had been transferred to non-union employees, the Arbitrator concluded that no violation of the Contract had occurred, because, "the disputed work that has been transferred to CNE's Help Desk is not the same work that is 'presently and routinely performed' by W & I employees. It is technologically different work."  The Arbitrator adds, "There is no evidence – nor does the Union contend – that the transfer of work to CNE's Help Desk was not made for reasons of business efficiently (sic)."  He concludes:

> There is merit in the Employer's argument
> that the contract's Management Rights clause,
> as well as the doctrine of residual rights,
> entitled it to make changes in its operation
> for legitimate, non-discriminatory reasons.
> There is no evidence that the changes in
> question were not made for legitimate
> reasons.

## Standard of Review

Because the parties to a labor agreement have contracted to have their disputes settled by an arbitrator, and have negotiated on the choice of that arbitrator, judicial review of arbitration awards must be "extremely narrow and exceedingly deferential." Bull HN Information Systems, Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000).  The First Circuit has identified few instances when a court may properly reverse an arbitrator's award.  These include when that award is:

> (1) unfounded in reason and fact; (2) based
> on reasoning so palpably faulty that no

> judge, or group of judges, ever could
> conceivably have made such a ruling; or (3)
> mistakenly based on a crucial assumption that
> is concededly a non-fact.

Advest, Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990).

Most important, the arbitrator's decision must be governed
by the labor contract.

> The paramount point to be remembered in labor
> arbitration is that the power and authority
> of an arbitrator is totally derived from the
> collective bargaining agreement and that he
> violates his obligation to the parties if he
> substitutes his own brand of industrial
> justice for what has been agreed to by the
> parties in that contract.

Salem Hospital v. Massachusetts Nurses Ass'n, 449 F.3d 234, 238
(1st Cir. 2006) (internal quotations omitted).  This limitation
on the powers of the arbitrator is echoed by the Contract between
the parties herein, which states in Article XXIV, "Arbitration,"
paragraph 5: "The arbitrator shall have jurisdiction only over
disputes arising out of grievances, as defined in Section 1 of
Article XXIV, and he/she shall have no power to add to, subtract
from, or modify in any way any of the terms of this Agreement."

## Analysis

The circumstances that underlie this dispute are that the
Hospital, in conjunction with its parent Care New England, has
implemented a new organization-wide telecommunications system,
bringing the Hospital into the 21st century.  Although their

duties have changed, the five bargaining unit employees on whose
behalf this grievance was brought have suffered no job loss.  Nor
have they suffered a diminution of hours or of pay; nor have they
undergone any worsening of the conditions of their work.  Some of
their duties remain unchanged.  Some of their duties have become
obsolete and are no longer being performed by any one.  However,
some of their duties, approximately 25% by the Arbitrator's
estimate, may have been transferred to non-bargaining unit
employees: the technicians who staff Care New England's Help
Desk.

   The Arbitrator's Decision is slightly vague about these
"transferred" duties.  He repeatedly writes that 25% of the
employees' duties have been "transferred to CNE's Help Desk."  In
one paragraph, however, he states that the transferred work is
"technologically different" and "is not the same work that is
'presently and routinely performed' by W & I employees."  These
characterizations are inconsistent, and the distinction is
significant.

   However, despite reservations about this possible ambiguity,
the Court affirms the Arbitrator's Award for three reasons.
First, the deferential standard of review provides little room
for the Court to reevaluate the precise nature of the transferred
work.  Second, the deferential standard of review remains
appropriate even in the face of an ambiguity in  an arbitrator's

-8-

award.  See United Steelworkers of America v. Enterprise Wheel &
Car Corp., 363 U.S. 593, 598 (1960) ("A mere ambiguity in the
opinion accompanying an award...is not a reason for refusing to
enforce the award.").  Third, as the Court has noted, the five
grieving employees have not suffered any adverse consequences as
a result of the Hospital's actions.

### Point of clarification

Because the parties have an ongoing relationship governed by
this Contract, some judicial clarification is necessary.  The
Arbitrator's Decision has larger implications – implications that
extend beyond the impact on these five bargaining unit employees.
The Union and the Hospital negotiated contract language that
prohibits the transfer of bargaining unit work to non-bargaining
unit employees during the term of the Contract.  In the face of
significant workplace changes that could result from a corporate
merger or acquisition of the Hospital, the language of Article
XXX provides safeguards for bargaining unit employees against
threats to job security that may have been only hypothetical at
the time of the provision's drafting.

The workplace changes imposed by the Hospital in connection
with the telecommunications system upgrade are described by the
Arbitrator as "legitimate," "non-discriminatory" and efficient.
Indeed, this Court concurs that the changes are reasonable.  The
issue, however, is not whether or not these changes are

-9-

legitimate, reasonable, or made in the interest of business efficiency.   Instead, the issue is whether or not these changes comport with Article XXX of the Contract.   To the extent that the bargaining unit employees' work has stayed the same, or has been discontinued because it's obsolete, there is no contract violation.   On the other hand, if specific tasks that were performed "presently" (that is, at the time of the filing of the grievance) and "routinely" by the bargaining unit employees have been transferred to non-bargaining unit employees, then Article XXX has been violated.   The limitations that are imposed on the Hospital by Article XXX must be clear to both parties going forward.

## Conclusion

For the reasons explained above, the Court affirms the Decision and Award issued by the Arbitrator on October 17, 2012. The clerk shall enter judgment for Defendant Women & Infants Hospital.

It is so ordered.


/s/Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge
November  14 , 2013